IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLEO TIDWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16–cv–0041–MJR–SCW |
| | ) |
| ASSELMEIER, | ) |
| TROST, | ) |
| STEVEN NEWBOLD, | ) |
| JOHN DOE | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Cleo Tidwell has sued multiple defendants based on the denial of dental care at Menard Correctional Center. After threshold screening, the Court found that Plaintiff had stated one claim: Defendants exhibited deliberate indifference towards Plaintiff's dental health, in violation of the Eighth Amendment, when they refused to provide him with dental care or dentures after he declined to have his teeth extracted. (Doc. 8). After filing suit, Plaintiff filed a motion for injunctive relief on February 17, 2016. (Doc. 9). Plaintiff requested that he be referred to an outside dentist for oral surgery, in light of a recommendation from the Menard dentist that all of Plaintiff's teeth be pulled. (Doc. 9). This matter has been

referred pursuant to 28 U.S.C. 636(b)(1)(B) to the undersigned for an evidentiary hearing.

On April 16, 2016, the Court held hearing on this matter. Defendants were not fully prepared to proceed at that time. Plaintiff clarified that he was not seeking a partial denture, which Defendants had represented was not possible given the condition of the teeth. Plaintiff was seeking dental care intended to save the teeth he had left, including referral to an outside specialist. The Court directed the Defendants to provide a witness to testify on Plaintiff's current condition and what treatment was available to save Plaintiff's teeth. The Court continued the hearing until May 13, 2016.

The Court held a hearing again on May 13, 2016. Plaintiff appeared pro-se. Kevin Adrian appeared for Defendants. Dr. Steve Newbold, D.M.D. testified before the Court.

**Factual Background**

Dr. Newbold, Chief Dentist at Menard, testified that none of Plaintiff's teeth required immediate extraction. Teeth numbers 12 and 13 in the upper left jaw are super-erupted and do not sit in the same plane as the rest of his teeth. One of the causes of super-eruption is a lack of an opposing tooth for the tooth to push on. If a tooth in the upper jaw is super-erupted, it suggests that there is not a tooth in the lower jaw to oppose that tooth. There does not have to be disease present for teeth to super-erupt. Once the teeth have erupted, the only solution is to pull them.

Plaintiff has periodontal disease, which may be caused by poor oral hygiene, lack of dental care, hereditary factors, environmental factors (diabetes, smoking) and

idiopathic factors. Negative consequences of periodontal disease may be delayed by proper home care and supplemental quarterly cleanings by a dental hygienist. These cleanings would include root planning and scaling. There is an anti-bacterial mouth wash that is commercially available that may also be helpful.

Plaintiff also suffers from bone loss in his jaw, which can be progressive, and is caused by periodontal disease. When he arrived at Menard in 2009, Plaintiff had advanced bone loss in some teeth and those teeth were extracted. There is no treatment for bone loss already suffered. However, additional bone loss can be treated by addressing the progression of periodontal disease. It may be slowed with regimented home care by the patient and regular professional cleanings. Plaintiff's initial visit to the dentist at Menard did not chart bone loss, but Plaintiff condition was described as "2A," which suggests moderate to severe problems with his teeth, including bad teeth, gum disease, and missing teeth.

Although the affidavit submitted by Dr. Asselmeier suggested otherwise, (Doc. 43-1, p. 2), Plaintiff has not had any routine cleanings of his teeth since he arrived in Menard in 2013. Dr. Newbold testified that inmates at Menard must request cleanings of their teeth. Plaintiff first sought dental care for the purposes of getting a partial denture, not for cleanings or treatment of his periodontal disease. Dr. Newbold took the position that Plaintiff has to have known that he had periodontal disease and that he should have specifically sought treatment for that issue. Dr. Newbold based his opinion that Plaintiff should have known he had periodontal disease on the fact that Plaintiff's teeth had movement, the x-ray showed bone loss, and he had previously had

teeth removed. Plaintiff cannot read medical x-rays, and argued that he was not aware that he had periodontal disease or bone loss. Dr. Newbold did not construe Plaintiff's grievances "to have his teeth saved" as a request for teeth cleaning or for evaluation of his disease from the Menard dental department because the grievance requested referral to an oral surgeon. When an inmate requests teeth cleaning, they go on a list and must wait their turn. The dental department does not prioritize teeth cleaning based on an inmate's condition. Menard has one employee that cleans teeth. It would be possible to move an inmate to the head of the line.

If Dr. Newbold was treating a patient on the street with early signs of bone loss, he would not immediately recommend tooth removal. He would recommend regimented home care, prescription mouth wash, and supplemental cleanings from a professional.

Practitioners at Menard cannot refer inmates out for specialty care. They must document the condition for Wexford's review and get approval from Wexford. Dr. Sandu is the Wexford utilization specialist for dental collegial review and is the only person that can approve outside dental care. The medical director of the institution, Dr. Trost, does not participate in dental collegial review. Dr. Newbold did not seek collegial review of Plaintiff's case. Dr. Newbold could prescribe mouthwash or rises, but those are not given to prisoners at Menard due to security concerns and/or cost. Salt water rinses are also recommended.

Finally, contrary to the opinion expressed in Dr. Asselmeier's affidavit, Dr. Newbold opined that it would be impossible for him to assess Mr. Tidwell's level of personal oral hygiene.  (Doc. 43-1, p. 2).

## Analysis

The purpose of a preliminary injunction is to preserve the status quo until the merits of a case may be resolved.  *Indiana Civ. Liberties Union v. O'Bannon*, **259 F.3d 766, 770 (7th Cir. 2001).**  *Accord Texas v. Camenisch*, **451 U.S. 390, 395 (1981) ("the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").**  A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** *Accord Winter v. Natural Res. Def. Council, Inc.*, **555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.");** *Girl Scouts of Manitou Cnty., Inc. v. Girl Scouts of USA, Inc.*, **549 F.3d 1079, 1085 (7th Cir. 2008) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (internal quotation marks omitted).**

To secure a preliminary injunction, a movant must show (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without the injunction, (3) the harm he would suffer is greater than the harm that the preliminary injunction would inflict on the defendants, and (4) the injunction is in the public interest. *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010) (citing** *Winter*, **555 U.S. at 20).** The

considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted. *Judge,* **612 F.3d at 546.**

Here, Plaintiff carries his burden of persuasion. Dr. Newbold testified that Plaintiff had serious dental conditions, including bone loss, periodontal disease, and tooth eruptions. He also testified that no one at Menard had taken any steps whatsoever to treat those conditions because Plaintiff had not specifically requested treatment for those conditions. Plaintiff argued that as a layperson, he was unaware of the nature of his condition and the appropriate treatment for it. When asked to explain why he believes that Plaintiff was aware of his disease, Dr. Newbold listed symptoms of the disease that Plaintiff should have been aware of. Plaintiff argued that as a layperson, he was not aware that having tooth movement was unusual and could not read his x-ray.

This is textbook deliberate indifference. Plaintiff's dental file contained information that he had a serious mental condition that would ultimately cause him to lose his teeth. In lieu of treating that condition, Defendants did nothing. They did not provide Plaintiff with regular cleanings with a dental hygienist. They did not attempt to assess Plaintiff's current level of dental hygiene. They did not instruct Plaintiff on the type of home care regime he would need to follow to retard the progression of his disease. They did not prescribe him anti-bacterial mouthwash or other treatment. And Defendants' position that they were not obligated to do anything because Plaintiff did not request treatment specifically for periodontal disease and bone loss is patently

frivolous. As medical professionals, the obligation to diagnose lies with them. Plaintiff may need to initiate the process of seeking medical care, but he does not need to use magic words or request specific care. And the evidence here is that Plaintiff sought medical attention for the state of his teeth and sent grievances regarding their condition. That is sufficient.

Plaintiff has also argued that without treatment, he will continue to lose his teeth, of which little less than half remain. Loss of one's original teeth is irreparable harm because they cannot be replaced organically.

It also appears that Plaintiff can be treated with very little effort on the part of the Defendants. He needs quarterly cleanings, which the prison employs a hygienist to perform. He also needs to follow a regimented home care routine, which Dr. Newbold testified that there were no obstacles to performing that care in prison. Dr. Newbold also testified that Plaintiff could benefit from an anti-bacterial mouth wash, but testified that cost and security concerns prevented him from prescribing it. When asked why a mouth wash could not be dispensed on a medication line like any other medication to prevent harmful use of it, Dr. Newbold had no answer. Also, the Court does not believe that the cost to treat one individual with mouthwash to be prohibitive. Overall, the effort to treat Plaintiff in line with Dr. Newbold's recommendations would be minimal. The harm to the Defendants would be small in comparison to the harm that would befall Plaintiff if his dental health is not addressed.

Additionally, assuming the allegations of earlier deliberate indifference were true, it is clear that this is an ongoing problem that has the potential to cause great harm

to Plaintiff. And the medical treatment of inmates, as wards of the state, is within the public interest.

However, under the PLRA, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." **18 U.S.C. § 3626(a)(2)**. Plaintiff's full request is to be referred to a "neutral" outside dentist for treatment, as those employed by Wexford have lost his trust. While Plaintiff may be able to prove that he is entitled to this treatment at the end of this case, the undersigned believes it is appropriate to grant a more narrowly drawn injunction at this point. For this reason, the undersigned recommends that Plaintiff receive quarterly cleanings from a qualified dental hygienist, including scaling and root planing, an anti-bacterial mouthwash that is appropriate to treat his condition, and adequate supplies to maintain his daily oral hygiene in his cell.

## Conclusion

The undersigned **RECOMMENDS** that the District Court **GRANT in part** Plaintiff's Motion for a preliminary injunction and **ORDER** that Plaintiff receive quarterly cleanings from a qualified dental hygienist, including scaling and root planing, an anti-bacterial mouthwash that is appropriate to treat his condition, and adequate supplies to maintain his daily oral hygiene in his cell. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the

District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).  **Objections to this Report and Recommendation must be filed on or before June 2, 2016.**  *See* **Fed. R. Civ. P. 6(d); SDIL-LR 5.1(c).**

**IT IS SO RECOMMENDED.**

DATE: **May 16, 2016**                                            */s/ Stephen C. Williams*
                                                              **STEPHEN C. WILLIAMS**
                                                              United States District Judge