IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLEO TIDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-cv-41-DWD |
| ) | |
| HARRY HENDERSON, and ) | |
| GAIL WALLS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Plaintiff Cleo Tidwell, who is incarcerated at Lawrence Correctional Center, filed this action on January 14, 2016, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 while he was incarcerated at Menard Correctional Center ("Menard"). Plaintiff alleges that Defendants Harry Henderson and Gail Walls violated his Eighth Amendment rights because they were deliberately indifferent to his serious dental needs by failing to treat Plaintiff's dental condition in a timely manner or to refer Plaintiff to a dentist outside of the prison. Now before the Court are Defendants' motions for summary judgment (Doc. 312; Doc. 316) to which Plaintiff did not respond.[1] For the reasons delineated below, Defendants' motions for summary judgment are **GRANTED.**

---

[1] On August 10, 2017, Plaintiff was sanctioned by the Court with a monetary fine and was barred from filing any civil pleadings in this District until the sanction is paid. *See Tidwell v. Menard C.C.*, No. 16-cv-384-SMY (S.D. Ill. Aug. 10, 2017, Doc. 43). Plaintiff appealed, but his appeal was dismissed for failure to pay the filing fee. Before the dismissal, the Seventh Circuit denied a motion for leave to appeal *in forma pauperis* due to Plaintiff's failure to present a good faith issue that the Court erred in imposing the ban. *See Tidwell v. Clendenin*, 7th Cir. Case. No. 17-3020. This filing ban remains in effect. Due to Plaintiff's inability to respond, rather than exercise discretion to deem the lack of response as an admission of the merits of the motions under Local Rule 7.1(c), the Court will review the motions on the merits.

## FACTUAL BACKGROUND

Plaintiff Cleo Tidwell was transferred to Lawrence Correctional Center in June 2016. Before being transferred and at all times relevant to his complaint, he was incarcerated at Menard Correctional Center ("Menard"). Defendant Harry Henderson was employed as a dentist at Menard from January 2011 to April 2015. Defendant Gail Walls worked at Menard as the director of nursing from July 2012 to July 2014 and as the healthcare unit administrator from July 2014 to October 2018. Plaintiff Tidwell alleges that Defendants Henderson and Walls were deliberately indifferent to his serious medical needs by delaying treatment of Tidwell's dental condition and by failing to refer Tidwell to an off-site dentist.

Tidwell's dental records indicate a history of periodontal disease, dating back to 1991. (Doc. 313-1, p. 1). Defendant Henderson examined Tidwell on three occasions at Menard. (Doc. 313-2, p. 1). On July 12, 2013, Henderson met with Tidwell to conduct a biannual dental examination. (Doc. 313-2, p. 1). Henderson's notes from that examination stated that Tidwell "needed one or more teeth extracted" and that he had significant tooth decay and poor oral hygiene. (Doc 313-2, p. 1). According to an affidavit Henderson submitted in support of his motion, Henderson also ordered a panoral x-ray, which are recommended every five years. (Doc. 313-2, p. 1).

On August 23, 2013, Henderson evaluated Tidwell's partial dental prosthesis. (Doc. 313-2, p. 2). According to Henderson's affidavit and Tidwell's medical records, Henderson noted during that meeting that fitting an upper and lower partial denture for Tidwell would be difficult for reasons that include: multiple missing teeth, tissue contact

pressing against the gum tissue above it, and limited ridge clearance between certain teeth and the gum below. (Doc. 313-2, p. 2; Doc. 313-3, p. 2). Tidwell met with Henderson again a week later, at which time Henderson told him that, for the best results, he needed four teeth removed before being fitted for upper and lower partial dentures. (Doc. 313-2, p. 2; Doc. 313-3, p. 4). Tidwell was unwilling to commit to the tooth extractions at that time and left without the recommended treatment, indicating that he would write when he was ready to commit to the treatment plan. (Doc. 313-2, p. 2; Doc. 313-3, p. 4).

After August 30, 2013, Tidwell never contacted Henderson again, nor was he scheduled on Henderson's dental call line. (Doc. 313-2, p. 2). Henderson did not examine or treat Tidwell against after August 2013. (Doc. 313-2, p. 2). Henderson did not prescribe a dental rinse during any of the three appointments because he determined, in his judgment, it was not within the scope of treatment for the dental concerns he was evaluating. (Doc. 313-2, p. 2). Tidwell alleges that he needed teeth cleaning, scaling, and planing during his appointments with Henderson; however, Henderson did not provide those procedures because they are performed by dental hygienists, who are responsible for scheduling their regular dental hygiene appointments at Menard without input from the dentists. (Doc. 313-2, p. 3).

In connection with this motion for summary judgment, the Court appointed an expert, D. Douglas Miley, D.M.D., M.S.D., to review Tidwell's dental records. (Doc. 155). Dr. Miley was given a list of topics and questions to address, and he identified four viable treatment options for Tidwell. (Doc. 313-1, p. 1-2). Three of these options included tooth extractions, and the other option called for regular periodontal cleanings. (Doc. 313-1, p.

1-2). Dr. Miley noted that one possible treatment would include "selected extractions due to either a poor prognosis or poor tooth position, and fabrication of [upper] and [lower] partial dentures." (Doc. 313-1, p. 1).

In a written declaration, Defendant Walls testified that her duties as healthcare unit administrator included verifying adherence to Illinois Department of Corrections policies and procedures regarding healthcare. (Doc. 317-1, p. 1). Although she is a registered nurse, Walls' position at Menard was administrative. (Doc. 317-1, p. 1-2). Walls did not provide dental treatment or dental hygiene services, and she did not make recommendations for off-site treatment. (Doc. 317-1, p. 2). Walls also lacked the authority to supersede a dentist's decision as to a plan of care. (Doc. 317-1, p. 2). Instead, Walls' duties included responding to grievances and letters related to healthcare questions. (Doc. 317-1, p. 1). She customarily responded in writing to grievances and letters regarding offender healthcare while working at Menard. (Doc. 317-1, p. 1). Walls responded to grievances and correspondence from Tidwell on six occasions, three of which related to Tidwell's dental health. (Doc. 317-1, p. 1-2).

On December 16, 2015, Tidwell wrote to Walls, stating that he had requested authorization for off-site dental treatment from the site medical director, Defendant Trost. (Doc. 317-1, p. 1-2). Walls conferred with the dental director, Dr. Newbold, who told her that it was not necessary that Tidwell be sent out of Menard for dental care, and Walls responded to Tidwell's letter accordingly. (Doc. 317-1, p. 2). About three weeks later, Tidwell sent another letter to Walls, expressing his dissatisfaction with his dental care and with Dr. Trost. (Doc. 317-1, p. 2). Walls reviewed Tidwell's dental records and

responded that the multiple dentists that had evaluated him "all agreed with the treatment plan" and that no dentist had referred his case to Dr. Trost. (Doc. 317-1, p. 2). Tidwell also sent an undated letter to Walls requesting (1) information regarding his spot in the teeth cleaning line and (2) documents that Walls had not yet returned to him. (Doc. 317-1, p. 2). On January 19, 2016, Walls responded that Tidwell was number 663 in the hygienists' cleaning line, and she returned the documents to Tidwell. (Doc. 317-1, p. 2).

## LEGAL STANDARDS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the

evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## II. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)(citation omitted).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(citation omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750. *Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015)(citing *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir.2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and

wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer*, 511 U.S. at 828 (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm")(internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Hammond*, 123 F. Supp. 3d at 1086 (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016))(alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *See Berry*, 604 F.3d at 441.

## ANALYSIS

Tooth decay can cause pain and is associated with a risk of infection, and it can constitute an objectively serious medical condition. *Berry*, 604 F.3d at 440 (citing *Board v. Farnham*, 394 F.3d 469, 480-81 & n.4, 482-83 (7th Cir. 2005); *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)). The defendants do not dispute the seriousness of Tidwell's dental problems. Therefore, the Court finds that a reasonable jury could conclude that Tidwell had an objectively serious medical condition.

### I. Deliberate Indifference

Defendant Henderson argues that he is entitled to summary judgment because he was not deliberately indifferent to Tidwell's serious medical needs. Henderson claims that he exercised his professional judgment to propose a treatment plan that would provide Tidwell with the best results and that Tidwell disagreed with this treatment plan. Important for the purposes of this motion is the well-established rule that a Court's consideration of claims of deliberate indifference must give deference to a medical professional's judgment regarding treatment decisions "unless no minimally competent

professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)(quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). A delay in treatment can rise to the level of deliberate indifference if the plaintiff presents medical evidence that the delay "exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-778 (7th Cir. 2015)(citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) and *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)); *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).

Henderson met with Tidwell on three occasions before Henderson retired from Menard. During the first appointment in July of 2013, Henderson observed that Tidwell had significant tooth decay and poor oral hygiene, and Henderson ordered a panoral x-ray for evaluation. In August of 2013, Henderson examined Tidwell's partial dental prosthesis and noted several conditions that would complicate the creation of upper and lower partial dentures. One week later, Henderson followed up with Tidwell and recommended the extraction of four teeth before creating upper and lower partial dentures. Tidwell refused the extractions, and, thereafter, he did not contact Henderson, schedule an appointment for Henderson's call line, and was never examined or treated by Henderson again.

There is no evidence to support Plaintiff's claim that Henderson disregarded an excessive risk to Plaintiff's health by delaying treatment. The record demonstrates that Henderson exercised his professional judgment to determine a course of treatment for Tidwell that included extracting four teeth and constructing partial upper and lower dentures. Tidwell refused to commit to these extractions and told Henderson that he

would write to him when he was ready, but he never contacted Henderson. In a declaration submitted in support of Henderson's motion, a court-appointed expert largely agreed with Henderson's professional judgment regarding Tidwell's treatment plan. There is nothing in the record that calls into question Henderson's professional judgment, and Plaintiff's mere disagreement with the treatment plan does not establish an Eighth Amendment violation. *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [Plaintiff] is not entitled to demand specific care."). Further, there is no evidence that Tidwell's dental condition worsened because of the treatment he received from Henderson or that Tidwell suffered any unnecessarily prolonged pain because of the treatment. In short, Henderson's treatment plan is entitled to deference because it was not so unsuitable that "no minimally competent professional would have so responded under those circumstances." *Roe*, 631 F.3d at 857.

The record is devoid of evidence that Henderson disregarded an excessive risk to Tidwell's health by failing to refer Tidwell to an off-site dentist. In order to prevail on a deliberate indifference claim against Henderson, the Plaintiff must show that Henderson was personally involved in, or acquiesced in, unconstitutional treatment of Plaintiff. *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) (citing *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). The record indicates that, after Henderson retired from Menard in April of 2015, Tidwell sent correspondence to Defendant Walls and the dental director requesting off-site dental treatment. At that time, the dental director determined that off-site dental care was unnecessary. However, there is no evidence that Tidwell

submitted a request to Henderson for the purpose of seeking off-site dental care, nor is there evidence that Tidwell requested off-site care during the period Henderson worked at Menard. Further, there is nothing in the record that indicates that off-site dental care was necessary to treat Tidwell's condition. Accordingly, for all these reasons, there is insufficient evidence to suggest that Henderson was personally involved in the alleged failure to refer Tidwell to an off-site dentist or that Henderson displayed deliberate indifference by failed to refer Tidwell for outside care.

Defendant Walls argues that she was not deliberately indifferent toward Tidwell because she fulfilled her duties by investigating and responding to Tidwell's complaints and by consulting with dentists about Tidwell's treatment plan. Defendant Walls did not provide healthcare treatment to Tidwell. As the healthcare unit administrator, her duties consisted of responding to grievances from offenders about their healthcare. Walls was aware of Tidwell's dissatisfaction with his dental care, and she responded in writing to all three of Tidwell's written complaints about his dental care. Significantly, there is nothing contained in the record that suggests Walls had the authority either to override a dentist's judgment regarding a treatment plan or to request off-site treatment on her own.

Further, when Walls received Tidwell's request for off-site treatment, she discussed the matter with Menard's dental director, who decided that off-site treatment was not necessary, and  she relayed this information to Tidwell. The evidence suggests that Walls took Tidwell's "condition seriously, investigated the situation … and reasonably relied on the doctors' professional opinions," and, therefore, Walls was not

deliberately indifferent toward Tidwell. *Johnson v. Doughty*, 433 F.3d 1001, 1015 (7th Cir. 2006) (citations omitted).

In addition to Defendants' arguments on the merits of Tidwell's claims, Henderson argues that Plaintiff's claims are barred by the applicable statute of limitations. Because the Court has reached a decision in Henderson's favor on the merits of Tidwell's claims, the Court declines to reach this argument.

## II. Qualified Immunity

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232. *See also Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To be "'clearly

established' a right must be defined so clearly that every reasonable official would have understood that what he was doing violated that right." *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015)(citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). There need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The right must be established "not as a broad general proposition." *Reichle*, 566 U.S. at 664. Instead, it must be "particularized" such that the "contours" of it are clear to a reasonable official. *Id*. That is, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carmen*, 135 S.Ct. 348, 350 (2014).

Defendants Henderson and Walls are entitled to qualified immunity. It was clearly established at the time of Tidwell's dental condition that prison officials cannot act with deliberate indifference to an inmate's serious medical or dental needs. However, Henderson and Walls engaged in no conduct that violated Tidwell's constitutional rights. This is because, even drawing all reasonable inferences in favor of Tidwell, no reasonable jury could conclude that Walls and Henderson were deliberately indifferent toward Tidwell. Therefore, the Defendants' conduct does not satisfy the first prong of the test set forth above, and they are entitled to qualified immunity.

CONCLUSION

For the above-stated reasons the motions for summary judgment filed by Defendants Harry Henderson (Doc. 312) and Gail Walls (Doc. 316) are **GRANTED**. The Clerk of Court shall enter judgment in favor of Defendant Harry Henderson and

Defendant Gail Walls and against Plaintiff Cleo Tidwell and shall close this case.

**SO ORDERED.**

Dated: February 5, 2021

_____
DAVID W. DUGAN
United States District Judge